**sUNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

Miguel Valentin, Jr.,

            Plaintiff,

    v.

Nancy A. Berryhill,
Acting Commissioner of
Social Security,

            Defendant.

No. 1:18-cv-0005

(Judge Richard P. Conaboy)

---

**MEMORANDUM**

**I.  Procedural Background.**

We consider here the appeal of Plaintiff Miguel Valentin,
Jr. from a decision of the Social Security Administration ("SSA"
or "Agency") that denied his application for Disability
Insurance Benefits ("DIB"). Plaintiff's application was
initially denied at the administrative level on October 24, 2014
whereupon he filed a request for a hearing before an
Administrative Law Judge ("ALJ"). Plaintiff received a hearing
before an ALJ on August 25, 2016. That hearing resulted in a
written decision dated October 25, 2016 that was unfavorable to
Plaintiff. Plaintiff then filed a request for review with the
Appeals Council but that body denied his request. The Appeals
Council's denial constitutes a final decision by the SSA and

vests this Court with jurisdiction over Plaintiff's appeal
pursuant to 42 U.S.C. § 405g.

## II.  Testimony before the ALJ.

A hearing was conducted before ALJ Randy Riley on August
25, 2016, in Harrisburg, Pennsylvania. Present at the hearing
were Plaintiff, his attorney, and Paul Anderson, a vocational
expert. The testimony may be summarized as follows.

Plaintiff was forty-nine years of age on the date of the
hearing. He is married and lives in an apartment with his wife.
He completed the eleventh grade and has not obtained a GED. He
can read and write in English but has no military training or
vocational training. (R. at 37-38).

Since he has been unemployed he has been supported by his
wife who works in their home as a baby sitter. He can dress
himself and shower without assistance but he does not cook, do
dishes, laundry, vacuum, or take out the trash. He spends most
of the day on the couch because he is on medications that make
him drowsy. He takes numerous small naps during the day. He and
his wife watch television together when her work is completed.
(R. 38-39).

Plaintiff has a driver's license but barely drives. Rather,
he depends upon his children to transport him. He cannot bend

over to touch his toes and requires his wife's help to put on his shoes and socks. He only climbs the stairs when necessary to get to his second floor apartment and cannot climb a ladder. He does not use illegal drugs. He drinks alcohol but does not believe that he has a problem with alcohol. He smokes approximately one pack of cigarettes each day. He takes his medications as prescribed and believes they are helping "somewhat". He suffers from anxiety and thinks the medication may be contributing to his dizziness and fatigue. (R. 39-42).

Plaintiff explained that the combination of the side effects of his medications and his inability to sit or stand for long periods of time make it impossible for him to work. He stated that he stays home seven days each week if he does not have an appointment of some sort. He stays home due to dizziness and anxiety. He dozes off for ten to fifteen minutes each day approximately nine to ten times. He is blind in his right eye and has only blurry vision in his left eye. This blurry vision in his left eye is sporadic. It happens three to four times each day despite his use of corrective lenses. He has extreme anxiety and experiences three to four panic attacks each day that last from fifteen to twenty minutes. His anxiety is exacerbated when he is alone. Two of the causes of his anxiety are his medical issues and the fact that he and his wife have lost their house.

At night he gets only two to three hours of sleep despite the fact that he takes Trazodone as a sleep aid. He also experiences difficulty with memory and concentration. (R. 42-49).

He was last employed by Home Depot. He was terminated from that job because he was missing a lot of time due to his medical issues with his feet. Home Depot approved his receipt of Unemployment Compensation Benefits but Plaintiff has lost his home due to his inability to make payments. He has been prescribed special shoes to alleviate his foot pain but he has no insurance and cannot afford them. He wears running shoes because they provide extra cushioning. Another reason that he seldom leaves his home is his fear of sun exposure. He has had skin cancer and has been advised by doctors to avoid sun exposure. Plaintiff sees a therapist weekly and a psychologist monthly. He has lost interest in things that normally interested him such as fishing and watching baseball with his boys. He is frustrated by his inability to help out around the house and argues with his wife about little things. (R. 49-53).

Paul Anderson also testified. Mr. Anderson is a vocational expert ("VE"). He testified that he is familiar with the SSA's definitions of the various types and exertional levels of work and that he is versed in the content of Dictionary of Occupational Titles. The VE also stated that he had reviewed

Plaintiff's occupational history. He identified two jobs
Plaintiff had held: (1)janitorial employment with the Harrisburg
Hotel Corporation, a medium/unskilled job; and (2) customer
service clerk at a Home Depot, a heavy/unskilled job. (R. 53-
56).

The ALJ phrased a hypothetical question to Mr. Anderson in
which he was asked to assume a person of the Plaintiff's age,
education, and work experience with limitations including:
inability to use ladders; the need to avoid exposure to
unprotected heights and moving machinery; avoidance of
commercial driving; avoidance of tasks requiring right
peripheral visual acuity; and the need to work that is limited
to simple, routine tasks with few workplace changes and no
interaction with the general public. Based on these assumptions,
the VE stated that such an individual could not do Plaintiff's
past relevant work. The VE did determine, however, that the
hypothetical individual could do such light duty jobs as "potato
chip sorter" and "bakery worker, conveyer line" and could
perform sedentary work such as "nut sorter".

The VE testified further that an additional limitation that
confined the hypothetical individual to only occasional "left
peripheral activity" would not limit his employability because
the jobs he had identified do not require "field of vision" for

Department of Labor standards. The VE did note that missing one and one-half days each month due to inability to obtain transportation would not permit competitive employment. Also, the VE stated that the need to take two unscheduled fifteen minute breaks each day to deal with health issues would render the hypothetical individual unemployable. (R. 56-59).

**III. Medical Evidence.**

    **a. Plaintiff's Treating Physicians.**

Dr. John P. Welch was Plaintiff's primary care physician for more than ten years during which he saw Plaintiff on more than thirty occasions. (R. 407). During the course of this treatment Dr. Welch consistently diagnosed Plaintiff as suffering from bilateral visual problems, diabetes mellitus, skin lesions, depression, and anxiety. (R. 281-468). Over the course of their doctor/patient relationship, Dr. Welch referred Plaintiff to specialists at the Milton S. Hershey Medical Center where he underwent surgery to remove a cancerous lesion from his nose and subsequent reconstructive surgery on his nasal region. (R. 288-314). Dr. Welch also referred Plaintiff to ocular specialists at the Milton S. Hershey Medical Center due to glaucoma of the right eye and abnormal intraocular pressure in both eyes. Ultimately, these specialists determined that

Plaintiff was blind in the right eye and had seriously impaired vision in his left eye.

Dr. Welch's progress notes document Plaintiff's anxiety and depression on many occasions. Dr. Welch also noted on many occasions that a major stressor for Plaintiff was the fact that he had lost his employment and with it his ability to provide for his family. Accordingly, Dr. Welch referred Plaintiff to T.W. Ponessa and Associates Counseling Services in July of 2015 where he was counseled on at least twenty-three occasions under the direction of Dr. Felicia De Jesus, a psychiatrist. Dr. De Jesus initially diagnosed Plaintiff as suffering from major depressive disorder and generalized anxiety disorder. Dr. De Jesus subsequently saw Plaintiff on at least three other occasions and Mitzie Rivera, a licensed counselor working under Dr. De Jesus' direction, saw Plaintiff on at least fourteen other occasions. (R. 394-406).

On July 19, 2016, Ms. Rivera completed a Mental Residual Functional Capacity Assessment regarding Plaintiff. (R. 471-474). Ms. Rivera noted that Plaintiff had been treated weekly for a period of one year and that his GAF scores had ranged from thirty-two to forty over that time. Ms. Rivera indicated also that Plaintiff had "marked" limitations in terms of his abilities to: work in coordination with or proximity to others

without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of unscheduled rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work settings; and tolerate normal levels of stress. Ms. Rivera also noted that Plaintiff had "extreme" limitations in his ability to travel in unfamiliar places or use public transportation.[1]

On January 16, 2016, Dr. Welch completed a Physical Residual Functional Capacity Questionnaire regarding Plaintiff. (R. 407-412). Dr. Welch noted that Plaintiff had psychological conditions that affect his physical condition including depression and anxiety. Dr. Welch noted also that both Plaintiff's physical and emotional impairments were reasonably consistent with the symptoms and functional limitations identified in his evaluation. Dr. Welch assessed that Plaintiff's conditions would never be severe enough to interfere

---

[1] In the context of the form Ms. Rivera completed, "marked" limitations indicate seriously limited ability to function and "extreme" limitations indicate that the ability to function is precluded.

with the attention and concentration needed to perform simple work tasks. However, he indicated that Plaintiff was incapable of tolerating even "low stress" jobs. Plaintiff's impairments were expected to produce good and bad days with the result that he would likely miss more than four days of work in a month's time. Dr. Welch also concluded that Plaintiff would be off task more than 15 per cent of an eight hour workday secondary to his need to take numerous unscheduled breaks of three minutes duration. Dr. Welch did not conclude that physical limitations alone would preclude Plaintiff from gainful employment.

### b. Dr. Spencer Long.

Dr. Long saw Plaintiff in his capacity as a consulting/ examining physician on referral from the Bureau of Disability Determination. On the basis of his one examination of Plaintiff conducted August 29, 2016, Dr. Long affirmed diagnoses of diabetes, glaucoma, bilateral hip and knee pain, poor balance, and hypertension. (R. 477-78). Dr. Long assigned Plaintiff a prognosis of "fair". Coincident with his physical examination of Plaintiff, Dr. Long executed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). As the name of this document implies, it sheds no light on Plaintiff's emotional impairments or their effect on his ability to work. Dr. Long's statement (R. 479-482) does generally support the

proposition that Plaintiff is physically capable of performing

such substantial gainful activity as the ALJ identified in his

decision. (R. at 23).

**IV. ALJ Decision.**

The ALJ's decision (Doc. 9-2) was unfavorable to Plaintiff.

It included the following findings of fact and conclusions of

law:

1. The claimant meets the insured status
   requirements of the Social Security Act through
   December 31, 2018.

2. The claimant has not engaged in substantial
   gainful activity since July 17, 2013, the
   alleged onset date.

3. The claimant has the following severe
   impairments: loss of vision in the right eye
   secondary to glaucoma; depression; and anxiety.

4. The claimant does not have an impairment or
   combination of impairments that meets or
   medically equals the severity of one of the
   listed impairments in 20 C.F.R Pt. 404, Sub
   Part P, Appx. 1.

5. After careful consideration of the entire
   record, the undersigned finds that the claimant

has a residual functional capacity to perform a full range of work at all exertional levels but with the following non exertional limitations: he can never climb ladders, ropes or scaffolds; he must avoid exposure to hazards, unprotected heights, and moving machinery with rapidly moving parts; he can do no commercial driving; he is limited to simple routine and repetitive tasks involving simple work-related decisions with few if any workplace changes and no interaction with the public; and the claimant can perform no work requiring right peripheral acuity.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on September 16, 1957 and was forty-five years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a

framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 17, 2013 through the date of this decision.

## V.   Disability Determination Process.

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2]   It is necessary for

---

[2]   "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. (Doc. 9-2 at 23).

**VI.  Standard of Review.**

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla".  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.  *See Cotter*, 642 F.2d at 706 ("Substantial evidence" can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted).  The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence. If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the

Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *See*, *e.g.*, *Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was

before the ALJ at the time he or she made his or her decision.
*Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## VII. Discussion

### A. General Considerations

At the outset of our review of whether the ALJ has met the
substantial evidence standard regarding the matters at issue
here, we note the Third Circuit has repeatedly emphasized the
special nature of proceedings for disability benefits. *See*
*Dobrowolsky*, 606 F.2d at 406. Social Security proceedings are
not strictly adversarial, but rather the Social Security
Administration provides an applicant with assistance to prove
his claim. *Id.* "These proceedings are extremely important to
the claimants, who are in real need in most instances and who
claim not charity but that which is rightfully due as provided
for in Chapter 7, Subchapter II, of the Social Security Act."
*Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d
837, 840 (3d Cir. 1974). As such, the agency must take extra
care in developing an administrative record and in explicitly
weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further,
the court in *Dobrowolsky* noted "the cases demonstrate that,
consistent with the legislative purpose, courts have mandated
that leniency be shown in establishing the claimant's disability,
and that the Secretary's responsibility to rebut it be strictly
construed." *Id.*

**B. Plaintiff's Allegations of Error.**

Plaintiff advances seven allegations of error in the Agency's decision that are to a significant extent repetitive. These allegations coalesce into one core assignment of error. That allegation questions whether the ALJ properly evaluated the medical evidence regarding the degree of impairment caused by his depressive disorder and generalized anxiety disorder—-both conditions the ALJ accepted as "severe impairments".[3] Having reviewed the entire record thoroughly, the Court finds that substantial evidence does not support the ALJ's decision with respect to Plaintiff's level of psychological/emotional impairment. Thus, the Court is concerned that the ALJ's RFC determination may not adequately account for Plaintiff's psychological/emotional impairments.

The ALJ assigned only limited weight to Dr. Welch's assessment of Plaintiff's psychological conditions. This assessment included Dr. Welch's findings: that Plaintiff was incapable of performing even low stress jobs; that Plaintiff's psychological impairments affected his ability to concentrate; and that Plaintiff would miss work more than four days each month and be off task for than 15 per cent of the time even on

---

[3] The Court finds unequivocally that the Medical Source Statements provided by Drs. Welch and Long constitute the requisite substantial evidence to support the ALJ's assessment of Plaintiff's physical capacities.

the days he was at work. Under applicable regulations and the law of the Third Circuit, a treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight. See, e.g., *Fargnoli v. Halter*, 247 F3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(c)(2); *Cotter v. Harris* 642 F2d 700,704 (3d Cir. 1981). Sometimes called the "treating physician rule," the principle is codified for cases, like the instant case, filed before March 27, 2017 at 20 C.F.R. 404.1527(c)(2). It is widely accepted in the Third Circuit. *Mason v. Shalala*, 994 F2d 1058(3d Cir. 1993). The regulation addresses the weight to be given to a treating source's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight." 20 C.F.R § 404.1527(c)(2). "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F3d 310,317(3d Cir. 2000)(citations omitted); see also *Brownawell v. Commissioner of Social Security*, 554 F3d 352,355 (3d Cir. 2008).

Nevertheless, relevant authority makes clear that a treating physicians' opinion is not always or automatically entitled to controlling weight. While the general principle that an ALJ need not cite every piece of relevant evidence in the record applies in the treating physician opinion context, the ALJ must adequately explain the reasons for rejecting a treating physician's opinion. *Fargnoli,* supra, at 42; see also *Sykes v. Apfel*, 228 F3d 259, 266n.9(3d Cir.)2009). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." *Morales, supra*, at 317 (*citing Plummer v. Apfel*, 186 F3d 422,429 (3d Cir. 1999). "Lay reinterpretation of medical evidence does not constitute 'inconsistent substantial evidence.'" Carver v. Colvin, 216 WL 6601665 at *16 (M.D.Pa. September 14, 2016). Thus, a reviewing Court must disregard medical evidence cited as contradictory if it is in fact merely lay interpretation or judgment rather than that of qualified medical professional.

The fundamental problem here is that the ALJ assigned only limited weight to Dr. Welch's assessment of Plaintiff's psychological conditions. This assessment included Dr. Welch's findings that Plaintiff was incapable of performing even low

stress jobs, that Plaintiff's psychological impairments affected his ability to concentrate, and that Plaintiff would miss work more than four days each month and be off task more than 15 per cent of the time even on the days he was at work.[4] Despite these assessments by Dr. Welch, the long-time treating physician, the ALJ gave short thrift to his opinion and stated: "Dr. Welch has an insufficient basis of knowledge for opining that the claimant's conditions, physical and mental, are disabling". (R. at 20).

This cavalier dismissal of the treating physician's opinion is completely unsupported by other, contradictory medical evidence of record as required by *Morales and Plummer*, supra. The ALJ points to absolutely nothing in the record offered by a competent medical provider that contradicts Dr. Welch's evaluation of Plaintiff's psychological impairment. The ALJ's perfunctory dismissal of Dr. Welch's opinion does not constitute evidence. Rather, it is mere speculation or lay opinion and, as such, insufficient to validate his decision.

Thus, based upon a lack of substantial evidence to support the ALJ's conclusion that Plaintiff can perform substantial

---

[4] Dr. Welch's assessments are corroborated by the Medical Source Statement from Plaintiff's mental health counselor, Mitzie Rivera, who, working under the direction of Psychiatrist Felicia De Jesus, provided therapy to Plaintiff at least 18 different occasions between July and December of 2015.

gainful activity despite his acknowledged severe psychological impairments, this case will be remanded to the Commissioner. The Commission is directed to expand the record to include the report of a consulting/examining psychiatrist and to then reexamine this case in light of said report. An Order consistent with this determination will be filed contemporaneously.

                                        BY THE COURT,


                                         S/Richard P. Conaboy
                                        RICHARD P. CONABOY
                                        UNITED STATES DISTRICT JUDGE

**Dated: October 9, 2018**